# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.:

TANYA DICK-STOCK and
DARRIN STOCK,

Plaintiffs,

    v.

BARCLAYS BANK PLC;
BARCLAYS TRUST INTERNATIONAL;
HSBC HOLDINGS PLC;
HSBC BANK USA, NATIONAL ASSOCIATION;
HSBC PRIVATE BANK (JERSEY) LIMITED;
ZAHED TRUST COMPANY LIMITED (d/b/a ZEDRA);
and ZEDRA HOLDINGS (US) INC.,

Defendants.

## COMPLAINT AND JURY TRIAL DEMAND

NOW COME Plaintiffs Tanya Dick-Stock and Darrin Stock, through their attorneys, the law firm of Edwards Kirby, LLP, and hereby submit their Complaint and Jury Demand against the above-named parties as follows:

## INTRODUCTION

1.    This case involves a trust established under Colorado law, for the benefit of a Colorado resident, with initial assets that consisted primarily of Colorado real estate.

2.    The Complaint alleges that the terms of the trust required any retiring corporate trustees to appoint a U.S. bank or trust. The co-trustees, Barclays Bank PLC and Barclays Trust International, however, who owed a duty of loyalty to the beneficiary,

[1]

conspired to appoint trustees in the Isle of Jersey. The Jersey appointment was part of a scheme to benefit both the defendants and a valued bank customer, rather than the beneficiary. As a result, a trust valued at more than $350 million is now worthless.

3.     In addition, defendants, working together, provided loans against trusts to benefit others, including themselves, instead of the beneficiary of the trusts.

4.     While investigating the loss of these millions of dollars, more than 300 boxes of documents were found that include forged loan agreements, wire transfer confirmations, internal memos/emails between the Defendants, banking records, and other records of their breach of fiduciary duties.

## THE PARTIES

5.     Plaintiff Tanya Dick-Stock, a.k.a. Tanya Dick ("Tanya Dick") is a citizen and resident of the State of Texas, United States.

6.     Darrin Stock ("Mr. Stock"), is married to Tanya Dick and is a citizen and resident of the State of Texas, United States.

7.     Tanya Dick is the sole beneficiary of Dick Family Trust 1 (DFT1), a trust created in 1984 under Colorado law. In 1995, when the trusteeship was improperly transferred to La Hougue, a company based in the Isle of Jersey, Tanya Dick was domiciled in Colorado and had trust assets worth more than $350 million. As a result of Defendants' wrongful actions, virtually all Tanya Dick's trust assets were lost, depleted, misappropriated, destroyed or stolen. As a result, she has suffered billions of dollars in damages.

[2]

8.    Mr. Stock, Tanya Dick's husband, has suffered millions in damages through Defendants' actions.

9.    Defendant Barclays Bank PLC ("Barclays Bank" or "Barclays") is a multinational bank headquartered at 1 Churchill Place, London, E14 5HP, United Kingdom. Barclays Bank is registered to do business in the State of Colorado, and its registered agent in Colorado is Corporation Service Company, 1900 W. Littleton Boulevard, Littleton, CO 80120.

10.    Defendant Barclays Trust International ("BTI") is a Jersey-based, wholly owned subsidiary of Barclays Bank. At all relevant times BTI was located at 39-41 Broad Street, St. Helier, Jersey, Channel Isles JE4 8PU. BTI was the co-trustee of DFT1.

11.    Defendant HSBC Holdings PLC ("HSBC") is a British universal bank and financial services group headquartered in London, England, at 8 Canada Square, E14 5HQ, United Kingdom.

12.    Defendant HSBC Bank USA, National Association ("HSBC") is a Delaware Corporation with a principal place of business at 1800 Tysons Boulevard, Suite 50, Tysons, VA, 22102. HSBC Banks USA, National Association is registered to do business in Colorado, and its registered agent is CT Corporation System, 7700 E. Arapahoe Road, Ste 220, Centennial, CO. 80112.

13.    Defendant HSBC Private Bank (Jersey) Limited ("HSBC") is located at 1 Grenville Street, St. Helier, Jersey, JE2 4PF Channel Islands.

14.    At all relevant times, the three HSBC entities were acting in concert regarding the activities referenced in this complaint.

[3]

15.     Defendant Zahed Trust Company Limited (d/b/a ZEDRA) ("Zedra") is a Jersey-based trust company located at 26 Esplanade, St Helier, Jersey JE2 3QA. In 2016, Zahed acquired a majority interest in Barclays Trust International from Barclays Bank PLC, which retained a 19.9% ownership interest. Following the acquisition, the company was renamed Zedra. Upon information and belief, in its purchase of Barclays Trust International, Zedra assumed all the assets and liabilities of BTI and thus is the successor in interest to BTI and responsible for all damages caused by Barclays Trust International.

16.     Defendant Zedra Holdings (US) Inc. ("Zedra") is a Delaware corporation with a principal place of business at 185 Alewife Brook Parkway, Suite 210, Cambridge MA, 02138.  Zedra Holdings (US) Inc. is registered with the Colorado Secretary of State and authorized to do business in Colorado, and its registered agent is Registered Agent Solutions, Inc., 7700 E. Arapahoe Road, Ste 220, Centennial CO  80112.

17.     The United States District Court for Colorado has personal jurisdiction over the Defendants pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) and CO Rev Stat § 13-1-124 (2024), which authorizes jurisdiction over foreign entities for any cause of action regarding the transaction of business, commission of tortious acts or the ownership, use, or possession of any real property situated in Colorado.

18.     All Defendants have sufficient minimum contacts with the District of Colorado. Those contacts include but are not limited to voluntarily accepting a trusteeship for a trust created under Colorado law, for the benefit of a Colorado resident, the validity of which is to be determined according to Colorado law according to the trust instrument. Further, the trust assets also included Land Securities Investments, Ltd., a

[4]

Colorado-based company that held title to very valuable real property located in Colorado.

19.     Further, the HSBC defendants have other minimum contacts that include but are not limited to HSBC making claims against the trust assets at issue in this case in a Denver court, wire transfers involving Colorado banks and financial institutions and making suspect loans while accepting assets from the Colorado trust at issue as collateral to benefit persons other than the beneficiary of that trust.

20.     The Zedra defendants have minimum contacts that include making wire transfers and conducting banking transactions in Colorado in furtherance of the fraud and breach of trust alleged in this action.

21.     Jurisdiction is proper under 28 U.S.C. § 1332(a) as the matter in controversy exceeds $75,000, exclusive of interest and costs and is between citizens of different states and foreign entities.

22.     Venue is proper in Colorado under 28 U.S.C. § 1391 (b)(ii and iii)  because a substantial part of the events or omissions giving rise to the claim occurred in Colorado.

**FACTUAL ALLEGATIONS**

23.     Mary Dick, the mother of plaintiff Tanya Dick, was the matriarch of the Dick family and was instrumental in the creation of and stewardship of the family's wealth.

24.     Mary and her husband, John Dick Sr., Tanya Dick's father, were among the pioneering investors in the property that ultimately became the Denver Tech Center, a

[5]

forward-looking development that would become a cornerstone of Colorado's economic expansion.

25.     Mary and John Dick Sr., as residents of Colorado, established a series of irrevocable trusts for the purpose of preserving, protecting and managing their growing fortune for the benefit of their two children.

26.     The Dick Family Trust No. 1 (DFT1) was created in 1984 under the laws of Colorado for the benefit of their daughter Tanya Dick, one of the Plaintiffs in this action. The principal initial assets of the trust were Colorado real property.

27.     The trust instrument that created DFT1 had a choice of law provision, which provides at pages 12 and 13 as follows:  "E. Applicable Law. The validity of this Trust Agreement shall be determined by reference to the laws of Colorado."  However, DFT1 goes on to say, "Questions of construction and administration of the trust shall be determined by reference to the laws of the state in which the trust is being administered." (Ex. 1). As a result, when Barclays and BTI became co-trustees of DFT1 in the Isle of Jersey, Isle of Jersey law applies and continues to apply to issues of the administration of this Colorado trust.

28.     On January 4, 1988, Defendants Barclays Bank and BTI were appointed co-trustees of DFT1.

29.     BTI was named as a trustee, and Barclays Bank became co-trustee through the appointment of David John Lowman, its employee.

[6]

30.     Based on the terms of the Deed of Appointment, Barclays Bank provided actual and/or apparent authority for David Lowman to be a co-trustee. Barclays Bank, as David Lowman's employer, is vicariously liable for his actions as co-trustee.

31.     Mr. Lowman, at all relevant times while he was co-trustee, was acting in his capacity as an employee of Barclays Bank.

32.     At all relevant times while BTI was acting in its capacity as co-trustee, it was wholly owned by Defendant Barclays Bank.

33.     Defendants Barclays Bank and BTI were acting in concert at all relevant times in relation to the losses suffered by Plaintiffs.

34.     The Dicks structured DFT1 as a fixed-interest trust, designed to ensure long-term financial security for their daughter, while insulating its assets from external interference. DFT1 was established for the sole benefit of Tanya Dick.

35.     A second trust, Dick Family Trust No. 2 (DFT2), was created for the sole benefit of Tanya Dick's brother John Dick Jr.  Subsequently John Dick Jr. aligned himself with his father and La Hougue, a trust company his father created.

36.     The trusts were established to provide transparency, accountability, and long-term stability.

37.     The trusts were created to benefit the children, Tanya Dick and John Dick Jr., and their parents were never to have access to the assets of the trusts. Nonetheless, their father, John Dick Sr., subsequently devoted enormous time and energy trying to tap into those very assets for his own benefit.

[7]

38.    Initially, the trusts worked essentially as they should have. In fact, as of September 7, 1995, the trusts in which Plaintiff Tanya Dick was either the sole beneficiary (DFT1), or one of the beneficiaries of a group of trusts known as the Jersey Trusts, collectively had documented assets worth more than $600 million.

39.    Defendants Barclays and BTI were the co-trustees of DFT1 in September 1995. As co-trustees of DFT1, they had control of assets worth hundreds of millions of dollars belonging to Tanya Dick. As co-trustees, Defendants Barclays Bank and BTI owed duties of loyalty, prudence and impartiality to the trust beneficiary, Tanya Dick.

40.    As noted above, Plaintiffs are in possession of more than 300 boxes of documents evidencing Defendants' wrongful activities. Among the hundreds of thousands of documents in the boxes are forged loan agreements, wire transfer confirmations, internal memos/emails between the Defendants, banking records, and other records of their breach of fiduciary duties.

41.    Those documents show that John Dick Sr., with the knowledge, approval and assistance of Barclays and BTI, formed a corporation, La Hougue, on the Isle of Jersey that he controlled. The Barclays defendants had certain of their employees resign from their jobs to take a job in La Hougue. The defendants then violated their duties as trustees by transferring the trusteeship for DFT1 to the new company, La Hougue, controlled by John Dick Sr.

42.    An internal memo generated by a Barclays employee dated 17 July 1979 documents a meeting between two BTI employees and John Dick Sr.  They all agreed

[8]

that "the time has come to set up one overall holding company" to hold the assets of John Dick Sr. and his brother-in-law, Werner Heinrichs.

43.     The memo was written by D.J. Lowman (a/k/a David Lowman), Assistant Director of Barclays and later appointed as a co-trustee of DFT1, along with BTI. The participants in the meeting included John Dick Sr., Werner Heinrichs (brother-in-law of Dick Sr.), Howard Scholefield (chairman of BTI), and Mr. Lowman.

44.     That holding company, La Hougue Boete Societe Fiduciare Avec Responsabilite Limited ("La Hougue"), was set up as a trust company in the "States of Jersey" on February 9, 1984. John Dick Sr., Tanya Dick's father, chose the name for the company and was the sole ultimate beneficial owner of La Hougue. The Barclays Defendants, who had been monitoring the formation of La Hougue, knew that John Dick Sr. was the sole beneficial owner of this newly formed entity.

45.     When La Hougue was formed, Mr. Scholefield stepped down as BTI chairman and became La Hougue chairman.

46.     A legal decision from the Jersey Court of Appeal in a case styled *Wadman v. Dick*, states: "La Hougue was formed in 1984 with the approval of Barclays Bank Trust Co. PLC, London, by Mr. Howard Scholefield, an associate of Mr. Dick's, on his retirement from the office of Chief Executive of BTI in Jersey." Mr. Scholefield was employed by La Hougue but remained a non-executive director of BTI for several years.

47.     La Hougue was operated by individuals who had worked at Barclays and resigned from Barclays the day before joining La Hougue.

[9]

48.    La Hougue set up the vast majority of its accounts at Barclays, thus allowing Barclays to profit from La Hougue's activities while purportedly trustee of DFT1. The former employees of Barclays kept Barclays informed of La Hougue's activities, including virtually all of La Hougue's financial transactions.

49.    In an order issued August 18, 1992, by the Denver County, Colorado District Court, the Court found:

(i)    that John Dick Sr. was the sole beneficial owner of La Hougue:

(ii)    that he controlled La Hougue;

(iii)    that La Hougue was the alter ego of John Dick Sr.;

(iv)    that La Hougue "knowingly assisted John W. Dick in fraudulently concealing his assets and breaching his fiduciary duties;"

(v)    that La Hougue "aided and abetted John W. Dick in breaching his fiduciary duties."

(Ex. 2).

50.    No later than November 11, 1994, Defendants had actual knowledge of all the disqualifying information listed in the preceding paragraph.

51.    On November 11, 1994, David A. Schute, on behalf of Defendant BTI and by David Lowman, on behalf of Defendant Barclays Bank, signed a Mutual Release regarding John Dick Sr.'s second divorce, which was attached to an Order of the Colorado Court of Appeals.

52.    Therefore, while the Defendants Barclays and BTI were still co-trustees, they had actual knowledge that La Hougue was John Dick Sr.'s alter ego and that both he

[10]

and La Hougue had been found by a Colorado court to have engaged in fraud and breach of fiduciary duties. These findings by the Colorado court, along with the fact that La Hougue was neither a U.S. bank nor a trust company, disqualified La Hougue and John Dick Sr. from serving as trustees of DFT1.

53.    On September 7, 1995, despite their knowledge of the fraud and breaches of fiduciary duties committed by John Dick Sr. and La Hougue, Defendants Barclays Bank and BTI nonetheless resigned as co-trustees of DFT1 and conspired to appoint La Hougue as successor trustee.

54.    Prior to September 7, 1995, both Defendants Barclays and BTI, as co-trustees, had actual knowledge that if they resigned as trustees, the plain language of the DFT1 Trust required: "Any corporate Trustee so resigning must designate a successor **from among those banks and trust companies situated in the United States** and having trust powers under applicable federal or state laws, and the acceptance of such successor corporate Trustee shall accompany the notice given hereunder by the corporate Trustee so resigning." (Ex. 1, page 9) (emphasis added).

**ULTRA VIRES**

55.    Defendants Barclays Bank and BTI's appointment of La Hougue as successor trustee was invalid because it was *ultra vires*. The trust instrument included an explicit requirement that any successor trustee be a U.S.-regulated bank or trust company. La Hougue Trust Company was a Jersey based company whose managing agents were former Barclays employees, and one former employee who had continuing duties with

[11]

Barclays. The appointment is therefore void *ab initio*, being *ultra vires* to the power of appointment set out in the trust instrument.

56.    This appointment was not merely a technical breach. It was a deliberate circumvention of the trust's protective language, which had been inserted at the insistence of Mary Dick to ensure that if Barclays were ever replaced, the trust would "come home" to the United States, where it could be administered by a regulated entity subject to U.S. fiduciary standards. Mary Dick had agreed to Barclays' initial appointment only because she believed it was "the gold standard" and qualified to serve as trustee.

57.    Barclays ignored legal advice from its own attorneys and appointed La Hougue, which was neither a bank nor a trust company regulated under U.S. law. Moreover, Barclays knew that La Hougue was beneficially owned by John  Dick Sr., who was prohibited from benefitting from any of the trusts or their assets.

### FRAUD ON A POWER

58.    The September 7, 1995, appointment of La Hougue was also a Fraud on a Power and void *ab initio* because the power was exercised for the impermissible purpose of benefitting a favored Barclays client, John Dick Sr., rather than exercising the power for the benefit of the beneficiaries.

59.    Both Defendants Barclays and BTI, as outlined above, knew (i) that La Hougue was owned by John Dick Sr., who was not a beneficiary and who had been excluded from benefitting from the trusts; (ii) that John Dick Sr. was the sole beneficial owner of La Hougue, having ultimate control and ownership of that entity; and (iii) that La Hougue and John Dick Sr. had been found by a Colorado District Court to have acted

[12]

fraudulently and to have breached their fiduciary duties. As such, the appointment was void *ab initio* (being a Fraud on a Power and for an improper purpose), and every act taken by La Hougue and any other purported trustees in their purported capacity as trustee was legally null and void from the instant the unauthorized appointment was made.

60.    In fact, because Defendants Barclays and BTI never successfully appointed a successor trustee, as the attempted appointment was legally null and void, Barclays Bank and BTI are still the trustees of DFT1 and accordingly liable for all losses suffered by Tanya Dick since September 7, 1995, as regards the trust assets.

61.    Under the principles affirmed in *Volpi v Volpi,* (2022 EWCA Civ 464) and *Grand View Private Trust Co Ltd v Wong* (2022 UKPC 47), a trustee's conduct constitutes a fraud on a power if the powers were exercised for an impermissible purpose, which is a purpose contrary to the benefit of the beneficiaries. The English Court of Appeal in *FS Capital Limited v. Adams* (2025 EWCA Civ 53), applying Jersey law, held that such actions are void *ab initio,* and that collusion between trustees and other beneficiaries, as well as knowing receipt of misappropriated assets, triggers a constructive trust to be imposed over any assets transferred out of the trust.

**THE JERSEY TRUSTS**

62.    The trusts known as the Jersey Trusts were separate and distinct from DFT1. Tanya Dick also had a beneficial interest in the Jersey Trusts. The Jersey Trusts (including but not limited to the Russian Trust and the Manor House Trust), were established in Jersey, Channel Islands, and were governed by Jersey law.

[13]

63.    These Jersey Trusts were used as offshore vehicles to hold and manage assets, often with less regulatory oversight. The Russian Trust was used to hold 35 million shares in the entity known as European Ferries.

64.    When Defendant BTI retired as trustee, it transferred control of the Russian Trust – and its valuable European Ferries shares – to La Hougue and therefore into the ultimate control of John Dick Sr. This was in direct violation of the Russian Trust's purpose and the rights of the named beneficiaries, because: (i) John Dick Sr., as Ultimate Beneficial Owner of La Hougue, gained effective control over the Russian Trust's assets, even though he was excluded from benefiting under the trust instrument; (ii) The appointment of La Hougue as trustee was made for an impermissible purpose: to benefit an excluded individual, John Dick Sr., rather than the beneficiaries of the Jersey trusts; (iii) This exercise of the appointment power was not only a breach of fiduciary duty, but a Fraud on a Power – the trust power was used for an impermissible purpose – not benefitting the beneficiary Tanya Dick; (iv) The Defendants and their accomplices improperly used DFT1 money to cover the misuse of Russian Trust assets.

65.    Under both Jersey law and English law, because this appointment was a fraud on a power and further being *ultra vires*, such an appointment is void *ab initio*. That means that Barclays and BTI are still trustees of the Jersey trusts, their resignation and appointment of La Hougue not being effective in law.

## THE HSBC DEFENDANTS

66.    By early 2012, La Hougue had renamed itself Pantrust. Pantrust – acting as the purported trustee of the Jersey trusts – applied for a loan exceeding £7 million from

[14]

HSBC. Although the loan was purportedly for the benefit of the Manor House Trust, that trust never received the money. The loan was, in reality, structured for the benefit of John Dick Sr., as well as certain key employees of La Hougue. The loan was secured with assets that did not belong to John Dick Sr., including assets of DFT1, the Manor House Trust and the Russian Trust, which were improperly pledged for loan repayments. For example, Land Securities Investors, which was a Colorado-based asset of DFT1, was fraudulently presented as an asset of the Russian Trust. (See also Receiver's Memorandum, Colorado District Court, Ex. 3).  Moreover, proceeds of the Manor House Trust loan from HSBC were stolen or misappropriated, and the benefits never flowed back to the trusts.

67.     To obtain the loan, Pantrust provided HSBC with fraudulent asset ownership structures and falsified financials. These included ownership charts falsely stating that Land Securities Investors and its general partner, Sunset Management, were owned by the Russian Trust – when in fact both were assets of DFT1. A second round of documents submitted to HSBC reiterated these misrepresentations, using vague, misleading, and contradictory language.

68.     These actions by Pantrust, to fraudulently misrepresent the assets of the Jersey trusts and DFT1 to secure liquidity for John Dick Sr. and certain key La Hougue officials to the detriment of all of those trusts, were a breach of trust.

69.     HSBC failed to perform basic due diligence: simple checks, further questions, or document requests would have revealed the fraudulent misrepresentations,

but HSBC did not carry out any or any adequate checks and proceeded to make the loan in clear violation of banking industry standards that applied at all material times.

70.     HSBC had actual knowledge of the bad actor status of La Hougue/Pantrust, including the findings of the Panamanian Regulator's Report (Ex. 4), which detailed serious misconduct and regulatory violations by these entities. HSBC facilitated the breach of trust by La Hougue/Pantrust by providing liquidity in the form of loans, when it knew or should have known that Pantrust was making misrepresentations as to the assets owned by the Jersey trusts and DFT1. The breach of trust by Pantrust would not have caused loss to the trust funds without the acts of HSBC, which dishonestly assisted the breach of trust by Pantrust.

71.     Shortly after the loan was made, HSBC entered into a Deferred Prosecution Agreement with the U.S. Department of Justice, requiring it to reassess all files across its business units and tighten reporting requirements. It was also required to reassess and increase its Know Your Customer protections, the process through which institutions verify the identities of a trust's beneficial owners and associated individuals to prevent financial crimes like money laundering.

72.     In 2015, Plaintiff Tanya Dick's attorneys notified HSBC of the fraud. HSBC did not act, did not respond, and failed to file a report with the Jersey financial authorities.

73.     Later in 2015, after La Hougue/Pantrust were removed as trustees of the Jersey trusts and Garfield Bennett Trust Company Ltd. was appointed, Garfield Bennett also notified HSBC of the problems with the loan. HSBC did not act, stating it would

[16]

communicate only with Richard G. de W. Wigley, the original settlor of the trust, or his son.

74.    In 2019-2020, HSBC further enabled the fraud by allowing the fire sale of St. John's Manor, a historic manor house on Jersey, in conjunction with loan repayment and permitting the loan to be increased and refinanced by Sancus, a Jersey lender with strong ties to HSBC.

## FIRST CAUSE OF ACTION
## FRAUD ON A POWER AND BREACH OF TRUST

### (Defendants Barclays Bank PLC; Barclays Trust International and Defendant Zahed Trust Company Limited through Barclays Trust International and Zedra Holdings (US) Inc.)

75.    Plaintiffs hereby incorporate all preceding paragraphs of this Complaint.

76.    The express language of DFT1 provides that the law where the trustee resides is the applicable law. In this case, Barclays resides in the United Kingdom and BTI and its successor corporation, Zahed Trust Company Limited, resides in Jersey.

77.    Under both English and Jersey law, the doctrine of "Fraud on a Power" or the "proper purpose rule" provides an extraordinary remedy. Proof of actual fraud is not required. Proving any improper purpose on the part of the trustee in the exercise of any trust power will suffice.

78.    Moreover, there is no applicable statute of limitations for a Fraud on a Power claim, because the application of this doctrine renders any improper actions by the trustee of a trust as void *ab initi*o, rather than merely voidable.

79.    Thus, Plaintiffs' claims in this case are not time barred.

[17]

80.     La Hougue, once improperly appointed as trustee by the Barclays defendants, used what appears to be a money laundering scheme, assisted in the removing assets of the trust to benefit John Dick Sr. when he was not a beneficiary of the trusts, and accepted and followed John Dick Sr.'s instructions, although he was not a trustee of the trusts.  Throughout their time as trustees, their actions clearly amounted to a continuous breach of trust.

81.     Barclays committed a Fraud on a Power by resigning and conspiring to appoint La Hougue as successor trustee when it knew that La Hougue was owned and controlled by John Dick Sr. and that in exercising the power of appointment it was acting for the benefit of John Dick Sr., who was not a beneficiary of the trusts, in allowing his control over the trust assets.

82.     Barclays' acts in appointing La Hougue was a Fraud on a Power and is therefore void *ab initio*. This results in Barclays, BTI and Zedra still being trustees of the Jersey trusts and DFT1 and being responsible for all the acts of La Hougue in breach of trust during their supposed trusteeship.

83.     Further, Barclays acts in appointing La Hougue were *ultra vires*, being contrary to the clear terms of the trust deeds, meaning that the exercise of the power of appointment is also rendered void *ab initio*.

84.     Accordingly, the Barclays defendants, as trustees, are responsible for all the losses caused by La Hougue's during the entire period of La Hougue and Pan Trusts trusteeship.

[18]

85.    Plaintiffs are entitled to equitable compensation for the damages they suffered from the actions of the Defendants.  *See Mitchell v Sheikh Mohamed Bin Issa Al Jaber* (No 2) [2025] UKSC 43.

86.    Barclays, and its wholly owned subsidiary BTI, are jointly and severally liable for the billions of dollars in damages their actions proximately caused to Plaintiffs, as described in this Complaint. Defendant Zahed Trust Company Limited and Zedra Holdings (US) Inc., as the successor companies to BTI, are jointly and severally liable for these damages through Barclays Trust International.

## SECOND CAUSE OF ACTION
## DISHONEST ASSISTANCE AND BREACH OF TRUST
### (Defendants HSBC Holdings PLC; HSBC Bank USA, National Association; and HSBC Private Bank (Jersey) Limited)

87.    Plaintiffs incorporate all preceding paragraphs of this Complaint.

88.    The conduct of the HSBC Defendants was fraudulent throughout their activities referred to in this Complaint.

89.    The HSBC Defendants dishonestly assisted the breaches of trust by La Hougue/Pantrust in that they:

a.    Facilitated the creation of false loans within the DFT1 trust;

b.    Recklessly accepted false and misleading documents in order to provide funds;

c.    Failed to undertake any adequate due diligence regarding the loans, including the violation of international banking regulations;

[19]

d.      Assisted La Hougue/Pantrust by facilitating payments to John Dick Sr., who they knew was not a beneficiary of the trust, and La Hougue employees;

e.      Recklessly facilitated the ability of La Hougue/Pantrust to create false debts on assets of the Jersey trusts and DFT1 – debts which were secured by assets not belonging to the relevant trusts – therefore causing loss to the value of assets within the Jersey trusts and DFT1.

90.    The HSBC Defendants committed acts, as described above, that caused billions of dollars in damages to the Plaintiffs.

91.    The HSBC Defendants' actions amount to dishonest assistance to La Hougue's breaches of trust that benefitted John Dick Sr. The HSBC Defendants are therefore jointly and severally liable for the damages suffered by the Plaintiffs caused by La Hougue's breaches of trust, which were facilitated by the actions of the HSBC Defendants.

92.    Plaintiffs are entitled to equitable compensation for the damages they suffered from the actions by the Defendants. *See Mitchell v Sheikh Mohamed Bin Issa Al Jaber* (No 2) [2025] UKSC 43.

93.    Plaintiffs request restitution of all trust assets lost or dissipated by HSBC's conduct; damages for losses suffered, including the value of St. John's Manor and all related trust assets; equitable relief, including the imposition of a constructive trust over any assets in HSBC's possession traceable to the fraud.

[20]

## PRAYER FOR RELIEF

1.      Plaintiffs respectfully request that the Court:

- Award damages in the amount of at least $12,000,000,000.00.

- Award equitable/compensatory damages for all Causes of Action in an amount to be proven at trial;

- Award equitable interest, compounded quarterly, for all damages suffered.

- Award punitive damages for all Causes of Action in an amount to be proven at trial;

- Award prejudgment interest at the prevailing legal rate;

- Award the costs of the suit, including reasonable attorney's fees;

- Impose a constructive trust over misappropriated assets to the extent that these can be traced;

- Order that an accounting be provided evidencing the losses and profits wrongfully earned as a proximate result of Defendants' actions amounting to a fraud on a power, La Hougue's resulting breaches of trust and fiduciary duties and dishonest assistance to La Hougue in their breaches of trust;

- Grant such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues so triable.

[21]

Respectfully submitted,

This 5th day of December, 2025.


s/ Johnny R. Edwards
Johnny R. Edwards
EDWARDS KIRBY, LLP
3201 Glenwood Avenue
Suite 100
Raleigh, N.C.  27612
Tel: 919-780-5400
jedwards@edwardskirby.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 5th day of December 2025, a true and correct copy of the foregoing *Complaint and Jury Demand* was e-filed with the Court.


<u>**s/** Johnny R. Edwards</u>
Johnny R. Edwards

[23]