**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
*8:08 am, Jul 17, 2026*
**JEFFREY P. COLWELL, CLERK**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-03923-CYC
(Related Proposed Intervention Complaint)

JORDAN DURANTE,
THE ESTATE OF JAMES WILLIAM DURRANT.

Plaintiffs,

v.

BARCLAYS BANK PLC;

HSBC BANK PLC;

HSBC BANK USA, NATIONAL ASSOCIATION;

ZEDRA TRUST COMPANY (JERSEY) LIMITED
(formerly BARCLAYTRUST INTERNATIONAL LIMITED),

Defendants.

---

PROPOSED COMPLAINT IN INTERVENTION

---

July 6th, 2026

INTRODUCTION

1. Plaintiffs seek leave to participate in these proceedings because they possess documentary evidence concerning Barclays Bank PLC, Barclaytrust International Limited ("BTI"), now Zedra Trust Company (Jersey) Limited, and related trust administration practices which Plaintiffs contend are relevant to issues already before this Court.
2. Plaintiffs are beneficiaries and representatives connected with trust structures established by James William Durrant ("JWD") during the 1970s.
3. Plaintiffs contend that many of the same trust administration practices, personnel, offshore structures, beneficial ownership issues, trustee authority issues, and customer identification issues appearing in this action also appear within the historical records of the Durrant family trusts.
4. Plaintiffs further contend that the documentary record demonstrates a continuous chain of administration involving BTI, Compendium Trust Company Limited, successor trust service providers and associated banking institutions.

FACTUAL BACKGROUND

The 1975 Structure

5. On 14 May 1975, James William Durrant wrote to Arie van der Vaart concerning trust arrangements being established in the Channel Islands and requested execution of trust documentation.





6. Plaintiffs contend that this correspondence represents the commencement of the trust structure later administered through BTI.
7. On 29 September 1975, a letter addressed to R.S.R. Harvey, Manager of Barclaytrust International Limited, authorised BTI to act upon instructions provided by James William Durrant concerning company and trust affairs.
8. Plaintiffs contend that this document demonstrates direct BTI involvement at the inception of the structure. The trust structure was started by BTI and bank accounts at Barclays were opened in the name of Oris Investments now known as Lobos Investments limited.

Barclays Accounts and Beneficial Ownership

9. Barclays customer records and account documentation subsequently recorded arrangements involving Patricia Grace O'Malley as the account holder. Barclays bank statements available.

10. Plaintiffs contend that uncertainty concerning the identity, status and role of Patricia Grace O'Malley persisted for decades and became central to later disputes concerning ownership and beneficiary rights.

11. Plaintiffs contend that failures in beneficial ownership verification and customer identification at inception caused continuing uncertainty regarding ownership, trusteeship and entitlement.

Harvey Correspondence

12. On 3 April 1979, R.S.R. Harvey wrote to James William Durrant concerning Lobos Investments Limited and Grace Investments Limited.

RSRH/CJLES

J. W. Durrant, Esq.,                              3rd April, 1979.
67 Darwin Court,
D Block,
Gloucester Avenue,
London - NW1 7BQ.

Dear Mr. Durrant, .

                    Lobos (Oris Investments) Limited
                    Grace Investments Limited

Mr. Wadman has conferred with me on two occassions regarding
the procedures discussed between you during his visit to your
office and subsequently over the telephone, and he has suggested
that it may be more appropriate for me to write to you at this
stage.  Mr. Wadman will be joining this office in mid-May,
primarily to act as Manager of Bank Cantrade Switzerland (C.I.)
Limited which is a subsidiary of the Union Bank of Switzerland
and which was registered and held its first Board Meeting in our
offices last week.

As I understand it, the main object is to switch the ownership
of the two above-mentioned companies from an Irish resident to
a U.K. resident who, in the near future, will emigrate.  This is
to be arranged without affecting the tax clearance of the U.K.
resident when he emigrates and without the necessity for him to
declare the shares or the underlying assets in the forms which will
have to be submitted to the Bank of England.  It is also to be
achieved insuch a way that the Irish resident will have no liability
for Income Tax, Capital Tax or Irish Gift Tax.

Our recommendation is that The Compendium Trust Company will be
Trustees of a Declaration of Trust dated prior to theintroduction
by Eire of Exchange Control regulations against the United Kingdom.

The Trust will acquire the shares in a Jersey company resident
for Exchange Control but controlled so as to qualify for Jersey
Corporation Tax, which means paying a maximum of £300 per annum.
The Trustees will borrow the cost of creating the Declaration of
Trust and the new company from Lobos Limited.

                                              /...

              1596

                        2247



- 2 -

The Irish resident will instruct Barclaytrust International
Limited to transfer the registered office and management of
both Lobos and Grace to The Compendium Trust Company Limited,
and will also instruct Compendium to hold the shares of Lobos.
(which owns Grace) to the order of the new Company.  At this
stage the Irish resident will still have a loan account due
from Lobos and it is recommended that this person should sign
an undated waiver of their right to the loan which will be
dated and activated as soon as the Irish resident emigrates
from that country.  If necessary, we would be happy to draft the
necessary letters of instruction that the Irish resident will
have to sign.

I enclose a copy of our standard Declaration of Trust so that
you can see the sort of vehicle we are talking about and with
the agreement of the U.K. resident we shall make his wife and
children beneficiaries of the Trust plus two charities so that
he can claim not to have the sole benefit as a family.  Perhaps
you could let me know the full names of this family.

As Trustees we shall execute a Letter of Intent which will
indicate that during the lifetime of our client we shall follow
his advice and recommendations in exercising our Trusteeship.
We shall, however, require a name from the client to whom we may
look for guidance on his demise, or alternatively, a detailed
letter setting out how he would wish Capital and Income divided
between his family.  You will appreciate that since the Declaration
of Trust is fully discretionary it will not be necessary for the
U.K. resident to declare its existence when he takes emigration
treatment from the Bank of England.

Once our U.K. resident client has emigrated we shall approach
the Bank of England for consent to distribute the income to him
when and where it is required.

The costs of this operation will be £500 for the Trust and £300
for the new company.  Annual management fees for each company
will be £300 per annum and the Annual management fee for the Trust
will be £150.

I hope the proposals I have outlined are  clear, and if not
perhaps you would like to telephone me and I will try to answer
any questions you may have.  You will appreciate, of course, that
as the properties are sold out of Lobos and Grace, the respective
companies can be wound up so as to reduce the costs of the number
of vehicles involved.

I look forward to hearing from you.

Kind regards,

Yours sincerely,

R. S. R. Harvey
Director.

P.S. We would be obliged if you would return the
Deed after perusal.

1597

2248

13. The correspondence discussed ownership restructuring, trust arrangements and transfers of control from an Irish resident and how Mr Harvey would back date trust deeds to avoid the Irie Control a taxation issue.
14. Plaintiffs contend that the letter demonstrates BTI's detailed involvement in ownership and trust administration decisions.

### Transfer to Compendium

15. On 10 May 1979, correspondence recorded proposed transfers involving Lobos Limited and administration by Compendium Trust Company Limited.
16. Plaintiffs contend that Compendium inherited structures previously administered by BTI.
17. Plaintiffs further contend that uncertainties regarding beneficial ownership and trustee authority continued following the transfer.

### Continuation of Ownership Issues

18. Shareholding records dated 30 October 1989 continued to record arrangements associated with Patricia Grace O'Malley.
19. Correspondence dated 5 November 1990 referred to uncertainty concerning beneficial ownership of monies held within trust-related accounts- this letter was written by Mr Samlley of Jaques and Lewis who is the executor of the Durrant estates. This lead to all monies and rental income being kept separate from the family hence the value of the trust never grew over all these decades.
20. Plaintiffs contend that such uncertainty should not have existed had proper ownership and trustee records been maintained by BTI.

21. A Declaration of Trust dated 8 December 2003 continued to reference Patricia Grace O'Malley in connection with ownership arrangements of the Emerald trust.

22. A Declaration of Trust dated February 12th, 2013, by the alleged trust service provider Equity trust shows that the owner is now EQ effectively now claiming the trust as their own all caused by BTI. On this declaration the trust is stated to be a bare trust which is consistent with the BTI trust from 1975 not the Emerald trust deed which the TMF Group rely on which is dated November 23rd, 1978, which names the Freemasons as the beneficiaries and does not contain Mr Durrant's signature nor his family name anywhere in the deed.



23. If declarations of trusts were in the name of Patricia Grace O'Malley from 1975 until 2013 as stated by Mr Smalley this would mean, there was a bank account running in her name for all these decades which is unbelievable that no bank since has checked if this person existed or not.



24. Jordan located Mr Norman from Compendium and recorded the call with him, and he stated that many Jersey bank accounts were shut by the banks as they could not find the true beneficial owners, this shows that the allegations of the Durante family and Dick family are directly because of a culture in the Jersey banking industry at that time which caused significant loss to both families.

25. The two persons who signed the deed from November 23rd, 1978, are Mr Harvey and Mr Norman both ex-employees of BTI and later became directors of the newly formed Compendium outfit.

26. The deed dated November 23rd, 1978, is an impossibility as BTI were still Mr Durrant's fund managers well into late 1979 or 1980.

27. The executor Mr Smalley elaborates further on the above point in his Isle of Man witness statements for the courts and states that he saw no evidence that assets were ever passed from BTI to Compendium and that he saw no evidence or any due diligence by BTI on Patricia Garce O'Malley.

28. Mr Smalley also states that no effort was made to find Mr Vaart by BTI ever or to verify his identity.

29. Plaintiffs contend that these records demonstrate continuing uncertainty decades after the original structure was established.

Van der Vaart Evidence

23. On 1 May 2019, Arie van der Vaart contacted TMF Group after being informed by Dutch tax authorities that accounts associated with the Emerald Trust had been reported in connection with him.

24. The accounts in Mr Vaart's name for the Emerald trust are coded just like the Dick family accounts and their clients from La Hougue.

25. Mr. van der Vaart requested an explanation regarding how such accounts had become associated with his name.

26. Plaintiffs contend that this correspondence demonstrates the continuing consequences of alleged failures in beneficial ownership identification, trustee governance and account administration.

27. The banking mandate for Mr Vaart went from Barclays to the William Glyn bank then to the Royal trust bank in the Isle of Man which then merged with the RBS and that's where Mr Vaart's name relates to an RBS Bank account in the name of the Emerald trust in Jersey.

28. Records of communications with the banks [RBS] confirming Mr Vaart's name is linked but will not share anything further with him due to strict privacy laws are available upon request.

29. The TMF Group file Mr Vaart under the CRS filings in Jersey has a UBO which is a Ultimate beneficial owner which supports him being the real trustee of the real Emerald trust from 1975 which Barclays knows.

30. Equity trust notes from a meeting dated January 17th, 2006, refer to Mr Vaart as the original trustee of the Emerald trust which means the trust structure was inherited from BTI.

31. The Jersey financial services commission has stated in emails that the interpretation of the CRS filings could mean that Mr Vaart is a trustee. Emails available on request.

32. Actions by BTI in the failure to do KYC has resulted in concealment of the true trustee's chosen by Mr Durrant and enabled banking accounts to continue for decades without persons knowledge is not acceptable.

TMF Confirmation

26. On 9 February 2021, TMF correspondence referred to documents signed in 1975 shortly before the Emerald Trust was established. In this email Mr Vaart asks to have you ever met Patricia Grace O'Malley showing the confusion caused by BTI'S lack procedure and how their policy changed like the weather.



27. The TMF Group stated that numerous times to Mr Vaart that the Emerald trust deed was started in 1975 which is well before Compendium started on March 16th, 1978, by ex-employees of BTI.

28. Plaintiffs contend that this correspondence confirms continuity between the original BTI-administered structure and later trust arrangements.

29. It should be note that Mr John William Dick and Mr James William Durrant were in business with each other since the mid 1970's and both used BTI and then used Compendium Trust Company.

30. It should be noted that name of Kingston realty Lots Trust is the location where Mr Durrant was murdered.

31. It should be noted that La Hougue UK accountant has confirmed that no repayment of $74 million dollars was made to the address of Grenville Barker on December 27th, 2002, which is the very next road to where Mr Durrant was murdered.

32. It stated that the loan notes have been used by the reported syndicate above to defraud the Dick and Durrant family assets.

COMMON ACTORS

28. Plaintiffs have identified the following individuals and entities as appearing within the Durrant trust records:

a. Barclaytrust International Limited;

b. Compendium Trust Company Limited

c. R.S.R. Harvey;

d. J.R. Wadman;





e. Mr Norman

f. Richard G. de W. Wigley;

g. Mr D J Le Main



h. Mr Lowan and all staff from BTI knew Mr James William Durrant very well from BTI.

I. All involved in the Dick family trusts and the subsequent USA land deal knew Mr Durrant well.

g. successor trust service providers.

29. Plaintiffs contend that these individuals and entities are relevant to issues already before the Court concerning trust administration, beneficial ownership, customer identification, trustee authority and offshore structures.

30. Durrant family monies have been kept separate for decades due to uncertainty in the true beneficial owners for decades all caused by BTI failure in KYC and basic due diligence.

31. The monies have been traced to a Midland bank account in Guernsey which was is the name of Peter Durrant who did not know of the bank account in his name until the police informed him of it after the murder of his father.

32. That account in Guernsey leads to a 1969 trust structure and a property company called Blueledger which has been concealed by the Jersey TSP until this very day, the account number has been located, and extensive evidence is available so show the account existence and many further concealed trusts, companies and bank accounts.

33. Funds just the Dick family have been kept at HSBC bank by the Executor Mr Smalley.

34. The Durante family wishes to make clear that Darrin and Tanya Dick-Stock have shown considerable kindness to the Durante family over a number of years. The Durante family considers Darrin and Tanya to be victims of the banking institutions in the same way that the Durante family has been affected.

35. The Durante family's position is that the banks and certain trust and corporate service providers (TSPs) have placed both the Durante family and the Dick family in an extremely difficult position. To resolve matters constructively, the Durante family proposes that all parties meet in private so that the allegations, evidence, and the respective positions of both families can be fully discussed and understood by the banks before any matters proceed in open court.

36. The Durante family encourages the banks to engage directly with Mr. Arie van der Vaart and to seek a fair and constructive resolution of the historical issues identified by the Claimant. The Durante family considers that appropriate remuneration or compensation should be provided to Mr. Van der Vaart and his family if, following proper consideration of the evidence, it is determined to be warranted.

## XI. DAMAGES

73. Plaintiffs contend that the alleged failures caused:

a. uncertainty concerning ownership;

b. uncertainty concerning trusteeship;

c. uncertainty concerning beneficial ownership;

d. inability to establish entitlement to trust assets;

e. extensive litigation in multiple jurisdictions;

f. substantial professional costs;

g. delayed distributions; - no distribution from 1975/1978 until 2022 when Jordan communicated with the Jersey TSP.

h. loss of opportunities and use of trust assets.

I. Fifty years plus of no benefit from a family trust has caused significant loss and personal strain on all the Durante family.

Thanks

Kind regards

Jordan Durante

Jordan.durante@proton.me

www.familytrustcrimes.com

Tel- 0044 77 60 659 967