IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

TANYA DICK-STOCK and DARRIN STOCK,

Plaintiffs,

v.

BARCLAYS BANK PLC; HSBC BANK PLC; HSBC BANK USA, NATIONAL ASSOCIATION; and ZEDRA TRUST COMPANY (JERSEY) LIMITED (f/k/a BARCLAYTRUST INTERNATIONAL LIMITED),

Defendants.

Case No. 1:25-cv-03923-CNS-CYC

ORAL ARGUMENT REQUESTED

**THE HSBC DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS


INTRODUCTION .......... 1

FACTUAL BACKGROUND .......... 2

ARGUMENT .......... 6

I. The Court Lacks Personal Jurisdiction Over the HSBC Defendants.......... 6

A. HSBC Bank Was Not Validly Served.......... 7

B. No General Jurisdiction Exists Over Either HSBC Defendant. .......... 8

C. No Specific Jurisdiction Exists Over Either HSBC Defendant.......... 8

II. Jersey is the More Convenient Forum for this Action. .......... 13

A. Jersey Is an Available and Adequate Forum for This Jersey Law Case. 14

B. Private and Public Interest Factors Favor Jersey as a Forum. .......... 14

III. Plaintiffs Fail to State a Claim Against the HSBC Defendants. .......... 17

A. Plaintiffs Allege No Injury Caused by the HSBC Defendants, and Darrin Stock Alleges No Injury at All. .......... 18

B. Plaintiffs' Dishonest Assistance Claims (Counts II & IV) Are Time-Barred and Do Not Identify Any "Dishonest Assistance" by HSBC. .......... 19

C. Plaintiffs' Unjust Enrichment Claims (Counts III & VI) Fail Because They Do Not Allege That HSBC Was Enriched.......... 21

D. Plaintiff Darrin Stock's Claim V Fails.......... 25

CONCLUSION.......... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AdvanFort Co. v. Zamil Offshore Servs. Co.*,
134 F.4th 760 (4th Cir. 2025), *cert. denied*, 146 S. Ct. 1484, 223 L. Ed. 2d 508 (2026) ........ 15

*Archangel Diamond Corp. Liquidating Tr. v. Lukoil*,
812 F.3d 799 (10th Cir. 2016) ........ 14, 15, 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 18, 26, 27

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 18

*Benton v. Cameco Corp.*,
375 F.3d 1070 (10th Cir. 2004) ........ 10

*Briseno v. Mktg. & Mgmt. Sols., LLC*,
No. 18-2482, 2020 WL 618577 (D. Kan. Feb. 10, 2020) ........ 11

*Brooks v. Bank of Boulder*,
891 F. Supp. 1469 (D. Colo. 1995) ........ 19

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ........ 9

*C&sm Int'l v. Prettylittlething.com Ltd.*,
2019 WL 7882077 (C.D. Cal. Oct. 8, 2019) ........ 8

*Calder v. Jones*,
465 U.S. 783 (1984) ........ 12, 13

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ........ 7, 9

*Dental Dynamics, LLC v. Jolly Dental Grp., LLC*,
946 F.3d 1223 (10th Cir. 2020) ........ 7, 12

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*,
514 F.3d 1063 (10th Cir. 2008) ........ 13

*Eighteen Seventy, LP v. Jayson*,
32 F.4th 956 (10th Cir. 2022) ........ 13

*Fed. Deposit Ins. Corp. v. Oaklawn Apartments*,
959 F.2d 170 (10th Cir. 1992) ........ 7

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) ........ 7, 11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ........ 7

*Grynberg v. Ivanhoe Energy, Inc.*,
666 F. Supp. 2d 1218 (D. Colo. 2009) ........ 6

*HSBC Bank (Uruguay) S.A. v. Seaboard Corp.*,
No. 21-cv-2435, 2022 WL 4447416 (D. Kan. Sept. 23, 2022) ........ 14, 16, 18

*Hukill v. Oklahoma Native Am. Domestic Violence Coal.*,
542 F.3d 794 (10th Cir. 2008) ........ 7

*Jenkins v. Panama Canal Ry. Co.*,
208 P.3d 238 (Colo. 2009) ........ 20

*Longhorn Vaccines & Diagnostics, LLC v. Spectrum Sols. LLC*,
564 F. Supp. 3d 1126 (D. Utah 2021) ........ 22

*Lumen Techs. Serv. Grp., LLC v. CEC Grp., LLC*,
691 F. Supp. 3d 1282 (D. Colo. 2023) ........ 9

*Menlove v. Bank of Am., N.A.*,
No. 2:12-cv-534, 2012 WL 4356367 (D. Utah 2012) ........ 25

*Miller v. Reckitt Benckiser Grp. PLC*,
698 F. Supp. 3d 889 (W.D. Va. 2023) ........ 8

*Nova Health Sys. v. Gandy*,
416 F.3d 1149 (10th Cir. 2005) ........ 19

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*,
484 U.S. 97 (1987) ........ 7

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981) ........ 14

*School-Link Techs., Inc. v. Applied Res., Inc.*,
471 F. Supp. 2d 1101 (D. Kan. 2007) ........ 24

*Soma Med. Int'l v. Standard Chartered Bank*,
196 F.3d 1292 (10th Cir. 1999) ........ 11

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007)........................................................................................ 5

*Trump v. New York*,
592 U.S. 125 (2020)...................................................................................... 20

*United States v. Bestfoods*,
524 U.S. 51 (1998)........................................................................................ 10

*Unitednet Ltd. v. Tata Commc'ns Am., Inc.*,
112 F.4th 1259 (10th Cir. 2024)........................................................ 14, 15, 16, 17

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
486 U.S. 694 (1988)........................................................................................ 8

*Weiszmann v. Kirkland & Ellis*,
732 F. Supp. 1540 (D. Colo. 1990) ................................................................. 25

*Whitmore v. Arkansas*,
495 U.S. 149 (1990)...................................................................................... 20

*Wilson v. Montano*,
715 F.3d 847 (10th Cir. 2013)......................................................................... 25

*Yavuz v. 61 MM, Ltd.*,
576 F.3d 1166 (10th Cir. 2009)................................................................*passim*

**Statutes**

C.R.S. § 13-1-124 ............................................................................................ 12

C.R.S. § 13-82-104(1)(a)................................................................................... 20

**Other Authorities**

U.K. Civ. P. Rule 6.3(2), 6.5(3)(b) and Practice Direction 6A ......................................... 8

Fed. R. Civ. P. 4(h)(2), 4(f)(1) .............................................................................. 8

Fed. R. Civ. P. 12(b)............................................................................... 1, 7, 18

Fed. R. Civ. P. 17(c)(1) ...................................................................... 19, 20

Fed. R. Civ. P. 44.1 ............................................................................................ 14

Defendants HSBC Bank plc ("HSBC Bank") and HSBC Bank USA, N.A. ("HSBC USA") (the "HSBC Defendants") move to dismiss the Second Amended Complaint ("SAC") under Rules 12(b)(2), (5) and (6), and the doctrine of *forum non conveniens*.[1]

## INTRODUCTION

This case, arising from a decades-long feud over family trust assets, is not about HSBC. Having failed to recover from the actual wrongdoers—the trustees—after more than ten years of litigation in Jersey, Plaintiffs make this last-ditch attempt at self-help by blaming third parties. Plaintiffs use HSBC's arm's-length, retail banking services to St. John's Manor Limited ("SJML"), a special purpose vehicle owned by one of the family's trusts, as a pretext for insisting that HSBC repay trust assets allegedly diverted by the trustee. But this theory is fundamentally flawed. Plaintiffs *do not* allege that any HSBC entity (1) served as a trustee or in any other fiduciary capacity with respect to the trust, (2) signed or was party to any trust instrument, (3) owed any duty to or had any dealings with Plaintiffs, or (4) had any involvement in or knowledge of the trustees' alleged misconduct. The SAC's own allegations state that HSBC was a victim of Pantrust's fraud: Pantrust allegedly provided HSBC with "fraudulent asset ownership structures and falsified financials" and lied about who owned the collateral in securing a 2012 loan for SJML. SAC ¶¶ 305–07. Plaintiffs' case against HSBC fails because a bank does not become liable for a trustee's misconduct in which the bank has no role by extending a loan to someone else. That theory would expose commercial banks to massive liability

[1] Counsel for the HSBC Defendants conferred in good faith with Plaintiffs' counsel prior to filing. Plaintiffs oppose the relief requested in this motion.

for client misconduct wholly unconnected to the banking relationship. Neither Jersey nor UK law supports this theory, and Plaintiffs bring no U.S. claims. The SAC fails because:

*First*, the SAC fails to establish personal jurisdiction over either HSBC Defendant. Neither is incorporated or headquartered in Colorado or otherwise subject to general jurisdiction. The conduct underlying Plaintiffs' claims occurred entirely in Jersey and cannot support specific jurisdiction. The SAC also attributes every allegation concerning "HSBC" to HSBC Bank and alleges no specific conduct at all by HSBC USA, including any role in the loan or banking relationship. Plaintiffs have not identified a single act by either HSBC Defendant purposefully directed at Colorado.

*Second*, the case should be dismissed under *forum non conveniens*. Plaintiffs' effort to litigate in Colorado represents forum shopping after years of related litigation in Jersey. This foreign-law dispute has no meaningful connection to Colorado: the claims arise exclusively under Jersey law, and the relevant witnesses, entities, and documents related to the HSBC Defendants' conduct are all in Jersey, giving the Jersey courts a much stronger interest in adjudicating this latest dispute over Plaintiffs' trust funds.

*Finally*, the SAC fails to state any cognizable claim against the HSBC Defendants. The claims are time-barred under the relevant statutes of limitations. Plaintiffs also fail to plead causation, any dishonest act or assistance by HSBC, or any unjust enrichment of HSBC at Plaintiffs' expense, all of which are required under Jersey law. And Plaintiff Darrin Stock—neither a beneficiary nor an authorized representative of any beneficiary—alleges no injury, much less injury caused by HSBC, and therefore lacks standing.

## **FACTUAL BACKGROUND**

Plaintiff Tanya Dick-Stock, a Texas domiciliary, alleges that the settlor (her father, John Dick, Sr.) and various trustees of foreign-law family trusts of which she is the beneficiary[2] used trust funds for themselves. SAC at 1–2. The primary alleged wrongdoer is La Hougue, a Jersey trust company, formed in 1984 and beneficially owned by Plaintiff's father, which was later renamed Pantrust and relocated to Panama. SAC ¶¶ 126, 239–240. Plaintiffs sued Dick Sr. and Pantrust over a decade ago. This case seeks to impute the harm they caused to the predecessor trustees—Barclays and BTI[3]—which resigned as trustees in 1995 before La Hougue was appointed as a successor trustee.

The HSBC Defendants—HSBC Bank, a UK subsidiary of HSBC Holdings plc with an office in Jersey, and HSBC USA, a Delaware corporation headquartered in Virginia (SAC ¶¶ 8–9)—had no role in the trust appointments or giving control of the trusts or their assets to any wrongdoers. The SAC's allegations against HSBC begin in 2006, over a decade after La Hougue took control, and concern HSBC Bank's provision of banking services to La Hougue/Pantrust. SAC ¶¶ 143, 165, 230–31. The SAC alleges only that the two HSBC entities "were acting in concert" (to do what, it is unclear). *Id.* ¶ 10.

Plaintiffs then assert the legal conclusions that HSBC's loan and banking services "dishonestly assisted" La Hougue/Pantrust's breaches (Counts II & IV) and unjustly enriched HSBC or harmed Plaintiffs (Counts III, V & VI). *Id.* ¶¶ 398–449. All claims arise

---

[2] The trusts include the Dick Family Trust No. 1 ("DFT1"), created in 1984 in Colorado and administered under Jersey law, and the Russian Trust and Manor House Trust, established in Jersey and governed by Jersey law. SAC at 3–4, ¶¶ 3 & 97.

[3] "BTI" refers to Defendant Zedra Trust Company (Jersey) Limited, formerly known as Barclaytrust International Limited. Plaintiffs allege BTI was a Barclays subsidiary, served as trustee of the Dick family trusts, and was acquired by Zedra. SAC ¶¶ 6–7 & 313–14.

under foreign law. The SAC alleges the following conduct involving HSBC Bank (no conduct is attributed to HSBC USA other than generic correspondent-banking):

***Banking services to La Hougue/Pantrust in 2006.*** Plaintiffs allege HSBC Bank maintained accounts and processed transactions for La Hougue/Pantrust. The SAC alleges that in 2006, La Hougue approached HSBC Bank to establish a banking relationship in Panama and Jersey. SAC ¶¶ 230–31 & 353. HSBC Bank then allegedly maintained coded accounts for Pantrust clients and did not perform know-your-customer ("KYC") diligence on them. *Id.* ¶¶ 233, 245–46. The SAC does not allege any relationship between these accounts or clients and the harm purportedly done to Plaintiffs. The SAC alleges that a former HSBC Panama vice president resigned from HSBC Bank and joined Pantrust's board, but not that she participated in any transaction involving Plaintiffs' trusts while at HSBC Bank or otherwise had any connection to alleged trust losses. *Id.* ¶ 243.

Plaintiffs also allege that HSBC USA processed wire transfers through its correspondent-banking system without verifying the identity of senders and beneficiaries (these allegations do not relate to any La Hougue/Pantrust transfers specifically). SAC at 2, ¶¶ 60-62, 135, 248-49. But none of the facts Plaintiffs present, including the sample wire transfers they attached as exhibits, involve HSBC USA. Every cited exhibit identifies a different bank instead. *See* ECF 115-47–115-50, 115-56–115-58. These exhibits therefore provide no support for connecting HSBC USA to any transaction at issue.

***Providing a 2012 loan for SJML.*** Plaintiffs also allege that HSBC Bank entered into a loan agreement with SJML (a special purpose vehicle owning real estate in Jersey, and itself owned by Manor House Trust). Specifically, Plaintiffs allege that in 2012, HSBC

Bank provided a £7 million loan to SJML after Pantrust, acting as trustee of Manor House Trust, applied for the loan from an HSBC Bank branch located in Jersey ("2012 Loan"). SAC ¶ 305; ECF 115-66 & 115-67. Critically, Plaintiffs allege that HSBC Bank was the *victim* of Pantrust's fraud on this loan: The SAC alleges Pantrust "provided HSBC Bank with fraudulent asset ownership structures and falsified financials"—in other words, that Pantrust deceived HSBC Bank about which entity actually owned the collateral to obtain the loan. *Id.* ¶¶ 306–07, 309. Plaintiffs cannot also claim that HSBC Bank "dishonestly assisted" the very fraud it endured. The SAC alleges no harm caused by HSBC Bank's provision of the loan, nor any role by HSBC USA in it.

By their own allegation, Plaintiffs put HSBC on notice in 2015 that the 2012 Loan was obtained under suspicious circumstances.[4] SAC ¶ 304. HSBC Bank allegedly responded citing confidentiality obligations to its client. *Id.* ¶ 310. The SAC alleges HSBC Bank later sought to collect on the loan despite being alerted to its improper origins but nowhere alleges that Pantrust's misrepresentations extinguished HSBC Bank's right to repayment. *Id.* ¶ 311. HSBC USA is not alleged to have participated in any of this post-loan conduct.

***Procedural History.*** Plaintiffs filed the original Complaint on December 5, 2025, naming, among others, HSBC Holdings plc, HSBC USA, and a nonexistent "HSBC

[4] Although the SAC elides specifying when in 2015 Plaintiffs raised concerns to HSBC Bank about the 2012 loan, the parties corresponded about these issues through counsel in May 2015—more than 10 years before this Complaint. *See* Defs' Ex. A. Although Plaintiffs excluded this correspondence from their voluminous exhibit list, the Court may appropriately consider them at this stage as they have been incorporated into the SAC by reference. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

Jersey" entity as defendants. ECF 1. On April 16, 2026, Plaintiffs filed a First Amended Complaint, dropping the nonexistent Jersey entity and suing HSBC Bank and HSBC Holdings. ECF 84. On July 13, 2026, Plaintiffs filed the Second Amended Complaint, naming HSBC Bank and HSBC USA as defendants. ECF 115. Plaintiffs recast all causes of action against the HSBC Defendants as equitable claims under Jersey law.

## <u>ARGUMENT</u>

### I. THE COURT LACKS PERSONAL JURISDICTION OVER THE HSBC DEFENDANTS.

The claims against the HSBC Defendants should be dismissed because HSBC Bank was not served properly, neither entity is at home in Colorado, neither purposefully directed activity at Colorado, and the alleged conduct occurred abroad.

When a defendant challenges personal jurisdiction, plaintiffs must make a *prima facie* showing that jurisdiction exists, and the court resolves factual disputes in plaintiffs' favor at that stage. *Grynberg v. Ivanhoe Energy, Inc.*, 666 F. Supp. 2d 1218, 1229 (D. Colo. 2009). When service is challenged, Plaintiffs bear the burden of proving its validity. *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992). If service is invalid, this Court lacks personal jurisdiction. *Hukill v. Oklahoma Native Am. Domestic Violence Coal.*, 542 F.3d 794, 802 (10th Cir. 2008) (service on unauthorized person at defendant's place of business failed service requirements). General jurisdiction exists only where affiliations with the forum state are "so continuous and systematic" that the corporate defendant is "essentially at home" there. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). For corporations, the paradigm bases for general jurisdiction are the place of incorporation and principal place of

business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quotation omitted). Specific jurisdiction requires that claims "arise out of or relate to" the defendant's forum contacts and that the defendant purposefully availed itself of the forum. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). Plaintiffs must demonstrate that (1) each defendant purposefully directed its activities at residents of the forum state, and (2) the plaintiff's injuries arise out of or relate to the defendant's forum-related activities. *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1229 (10th Cir. 2020).

**A. HSBC Bank Was Not Validly Served.**

Plaintiffs failed to properly serve HSBC Bank, the only HSBC Defendant about which they make any allegations. Fed. R. Civ. P. 12(b)(5). Service of US legal process on a foreign defendant ensures that a US litigant's effort to haul a foreign party into a US court comports with both US and foreign law. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). HSBC notified Plaintiffs of the formal foreign service requirements in January, and the Court set a specific deadline for service of foreign entities. Plaintiffs did not follow the applicable rules and instead purported to serve HSBC Bank by leaving papers with a receptionist who was not authorized to accept service.

Because HSBC Bank is organized under UK law, service must comply with the Hague Convention, *see* Fed. R. Civ. P. 4(h)(2), 4(f)(1); *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988), and the Court must determine whether service was "properly executed" under British law, *Miller v. Reckitt Benckiser Grp. PLC*, 698 F. Supp. 3d 889, 907 (W.D. Va. 2023). UK Civil Procedure authorizes personal service on a company by "leaving it with a person holding a senior position"—a

director, treasurer, secretary, chief executive, manager, or other officer. U.K. Civ. P. Rule 6.3(2), 6.5(3)(b) & Practice Direction 6A. On August 3, 2026, a courier delivered unlabeled documents to HSBC Bank's reception area, placed them in a drop box for collection by the courier reception team, and, when asked what the documents were and who they were for, cursorily responded that they were for the legal department. Secular Decl. ¶¶ 1–4. The employee who collected them from the drop box was not an authorized recipient of legal service, nor do Plaintiffs contend that he held a qualifying "senior position." *See* Practice Direction 6A. Courts consistently quash service under these circumstances. *See Miller*, 698 F. Supp. 3d at 907 (quashing service on U.K.-based defendant where plaintiff served defendant's non-qualifying employee); *C&sm Int'l v. Prettylittlething.com Ltd.*, 2019 WL 7882077, at *2 (C.D. Cal. Oct. 8, 2019) (similar). This Court should do so here.

**B. No General Jurisdiction Exists Over Either HSBC Defendant.**

Neither HSBC Defendant is "at home" in Colorado. HSBC Bank is incorporated and headquartered in England, with an office on the Isle of Jersey. SAC ¶ 8. HSBC USA is incorporated in Delaware with its principal place of business in Virginia. SAC ¶ 9. The SAC contains no allegations that either HSBC Defendant has the "continuous and systematic" contacts necessary to render it essentially at home in Colorado, nor does it allege that this is the type of "exceptional case" required to justify general jurisdiction elsewhere. *See Daimler*, 571 U.S. at 137 & 139 n.19. HSBC USA's mere "regist[ration] to do business in Colorado," SAC ¶ 9, does not establish general jurisdiction. *See Lumen Techs. Serv. Grp., LLC v. CEC Grp., LLC*, 691 F. Supp. 3d 1282, 1296 (D. Colo. 2023).

**C. No Specific Jurisdiction Exists Over Either HSBC Defendant.**

**1. The SAC Alleges No Action by Either HSBC Defendant Aimed at Colorado.**

Plaintiffs identify two HSBC Bank activities as bases for their claims: (1) extending (and later seeking to collect on) a loan to another party (SAC ¶¶ 305–12); and (2) holding and processing transactions associated with bank accounts for La Hougue/Pantrust (*id.* ¶¶ 230–248, 398–410). None of this conduct is actionably connected to Colorado.

The 2012 Loan is plainly a Jersey contact. HSBC Bank made the loan to a Jersey trust with a Jersey-based trustee, governed by Jersey law. SAC ¶ 305. Plaintiffs' only asserted Colorado connection is Land Securities Investors, Ltd. ("LSI"), an asset of DFT1. SAC ¶ 15. But Plaintiffs allege that Pantrust, which applied for the loan on SJML's behalf, fraudulently misrepresented LSI as an asset of the Russian Trust. *Id.* ¶¶ 306–07. A Colorado connection concealed from the lender is not a deliberate affiliation with the state. HSBC Bank therefore did nothing to "purposefully avail" itself of Colorado. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985) (purposeful availment requires "deliberate" affiliation with forum). Plaintiffs' allegation that they "put HSBC on notice" of "suspicious circumstances" regarding the loan, *id.* ¶ 304, identifies no Colorado contact.

Plaintiffs likewise place HSBC Bank's banking contacts with Pantrust/La Hougue entirely in Panama and Jersey. SAC ¶¶ 230–31. The La Hougue business plan establishes that the relationship was negotiated in Panama and Jersey, with La Hougue's stated policy to "maintain a banking relationship in Panama, but hold the large majority of balances in Jersey." ECF 115-51. Accordingly, accounts were opened and maintained in Jersey and Panama, and any KYC (or alleged lack thereof) occurred there—not in or directed at Colorado. SAC ¶¶ 231–47, 261–66, 296 & 349.

Further, none of this conduct implicates HSBC USA. The SAC does not allege that HSBC USA originated, funded, or administered the loan; was party to the banking relationship with La Hougue/Pantrust; or had any contacts with Plaintiffs, La Hougue/Pantrust, or the trusts. The SAC's conclusory assertion that the two HSBC entities "were acting in concert" is insufficient. SAC ¶ 10. Unspecified "concerted action" does not impute one entity's jurisdictional contacts to another. *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1081 (10th Cir. 2004) (no imputation absent veil piercing or alter ego allegations); *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("[A] parent corporation . . . is not liable for the acts of its subsidiaries." (quotation omitted)).

**2. HSBC USA's Role as a Nationwide Correspondent Bank Does Not Bestow Specific Jurisdiction in Colorado.**

Every exhibit Plaintiffs cite for the alleged improper wire transfers identifies another bank—not HSBC USA—as correspondent bank. *See* ECF 115-47–115-50, 115-56–115-58. The SAC nevertheless asks the Court to infer that HSBC USA "facilitated" U.S. dollar transactions for non-U.S. clients of HSBC affiliates; that La Hougue/Pantrust was a non-US client of HSBC Bank; that Plaintiffs' US trusts (with which HSBC is alleged to have no involvement) held US dollars; and that HSBC USA "knowingly provided this service" to "La Hougue/Pantrust, Barclays, HSBC, and others." SAC ¶¶ 56–64. These artfully crafted allegations obscure the fact that HSBC USA is not alleged to have had any role in any transaction at issue in this case—the SAC does not identify a single transaction involving any of these parties (let alone a Colorado transaction) in which HSBC USA played a part.

*First*, Plaintiffs identify no conduct by HSBC USA *related to this case* to support specific jurisdiction. The allegation that HSBC USA provides "a U.S. platform to its non-

U.S. clients" and to overcome a "choke point" in U.S. dollar transactions for foreign clients (SAC ¶¶ 57, 59) is irrelevant and involves no conduct purposefully directed at Colorado. Processing transactions through the U.S. banking system does not confer jurisdiction in any specific district. *See Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295–99 (10th Cir. 1999) (international banking institution that had wrongfully disbursed funds from the forum state plaintiff's international account did not purposefully direct its activities at the forum state); *Briseno v. Mktg. & Mgmt. Sols., LLC*, No. 18-2482, 2020 WL 618577, at *8 (D. Kan. Feb. 10, 2020) (passively processing wire transfers was not purposeful direction of activities into forum state).

Even if HSBC USA *had* processed wire transfers touching Colorado, Plaintiffs' claims must "arise out of or relate to" those forum contacts. *Ford Motor*, 592 U.S. at 359. Plaintiffs' Dishonest Assistance claims are based on HSBC Bank's banking relationship with Pantrust and the 2012 Loan, not HSBC USA wire transfers in Colorado. SAC ¶¶ 305–12 & 430–36. Plaintiffs' Unconscionable Retention claim alleges that HSBC retained "fees, interest, spreads, collateral benefits, and other financial advantages" from the misuse of trust assets (*id.* ¶ 414) but does not identify any specific fee, interest payment, or financial advantage received by HSBC USA (as distinct from HSBC Bank). Generic correspondent banking activity, even if it touched Colorado, does not "relate to" the claims here and cannot support specific jurisdiction. *See Dental Dynamics*, 946 F.3d at 1229 (injuries must arise out of or relate to defendant's forum-related activities).

*Second*, the wire transfer allegations are conclusory, lacking any factual support. The SAC does not identify a single wire transfer relevant to this case that implicates or

was routed through HSBC USA. The only specific transactions identified anywhere in the SAC (the sample transactions at ¶¶ 215–20 and 261–66) do not show HSBC USA as the U.S. intermediary. *See* ECF 115-47–115-50, 115-56–115-58. Any handwritten notations reflecting funds later received in Pantrust's Panama account, *see, e.g.*, ECF 115-56 ("Pantrust received US$643,416.70 on 6/8/08"), ECF 115-58 ("$551,414.88 received @ HSBC 31/10/08") confirm only that HSBC *in Panama*—not HSBC USA—held the ultimate destination account for Pantrust. Thus, even if a correspondent bank's role as an intermediary could give rise to personal jurisdiction, which it cannot, HSBC USA was not that intermediary.

### 3. The *Calder* Effects Test Is Not Satisfied.

The SAC invokes Colorado's long-arm statute, C.R.S. § 13-1-124, and alleges that the HSBC Defendants "purposefully directed" their conduct at Colorado. SAC ¶¶ 18, 46–55. Under this theory, a plaintiff must allege that the defendant's conduct is (1) an intentional tortious action, (2) expressly aimed at the forum state, and (3) made with knowledge that the brunt of the injury would be felt in the forum state. *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 964, 966–67 (10th Cir. 2022) (*citing Calder v. Jones*, 465 U.S. 783 (1984)). Plaintiffs cannot satisfy this test.

The SAC's core theory is negligence: that HSBC Bank "failed to perform basic due diligence" and that "simple checks, further questions, or document requests would have revealed" Pantrust's fraud. SAC ¶ 309. Negligent failure to detect fraud perpetrated *against* HSBC is not intentional, forum-directed conduct. Nor do allegations of a "money laundering partnership" and unrelated AML/KYC failures (SAC ¶¶ 242–48, 345–47)

transform that theory; calling compliance failures "dishonest" does not satisfy *Calder*. *Eighteen Seventy*, 32 F.4th at 970–80. Even crediting the SAC's most aggressive allegations, the alleged conduct was not aimed at Colorado. The banking relationship was established in Panama and Jersey; the loan was made in Jersey for a Jersey trust; and the accounts were maintained in Jersey and Panama. The mere foreseeability that injury might be felt in Colorado is insufficient; the "focal point" of the tortious conduct must be aimed at the forum*, see Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1077 (10th Cir. 2008), and it was not.

Because the Court lacks personal jurisdiction over the HSBC Defendants, the claims against them should be dismissed.

## II. JERSEY IS THE MORE CONVENIENT FORUM FOR THIS ACTION.

Plaintiffs' claims should separately be dismissed because they do not belong in the District of Colorado.[5] "[A] district court [may] decline jurisdiction over a case when another forum is better suited to adjudicate the dispute" under *forum non conveniens*. *Unitednet Ltd. v. Tata Commc'ns Am., Inc.*, 112 F.4th 1259, 1265 (10th Cir. 2024) (citation omitted). "[T]he central focus of the *forum non conveniens* inquiry is convenience." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981); *see also Archangel Diamond Corp. Liquidating Tr. v. Lukoil*, 812 F.3d 799, 808 (10th Cir. 2016) (dismissing case with "closer connections and greater interest to Russia" than Colorado though plaintiff was Colorado

[5] Per Federal Rule of Civil Procedure 44.1, the HSBC Defendants are contemporaneously filing a Declaration from Marc Seddon ("Seddon Decl."), a Jersey-based attorney expert on issues involving the forum of Jersey and Jersey law. *See* Fed. R. Civ. P. 44.1; *Oteng v. Golden Star Res.*, Ltd., 615 F. Supp. 2d 1228, 1238 (D. Colo. 2009) (Rule 44.1 permits a court to consider declaration from expert on foreign law at motion to dismiss stage).

trust with Colorado trustee). Courts analyze whether (i) there is an available adequate alternative forum where defendant is amenable to process, (ii) foreign law applies, and (iii) private and public interest factors favor dismissing for improper venue. *See id.* at 804.

**A. Jersey Is an Available and Adequate Forum for This Jersey Law Case.**

Plaintiffs themselves assert that "this matter is governed by Jersey law" and concerns actions that occurred in Jersey. SAC at 4. Because the HSBC Defendants concede that they are amenable to service of process in Jersey, Jersey is an "available" forum under the *forum non conveniens* analysis. *See Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1174 (10th Cir. 2009). An alternative forum is "'adequate' as long as the parties will not be deprived of all remedies or treated unfairly."[6] *HSBC Bank (Uruguay) S.A. v. Seaboard Corp.*, No. 21-cv-2435, 2022 WL 4447416, at *8 (D. Kan. Sept. 23, 2022). The adequacy analysis therefore focuses on the "remedy provided by the alternate forum[.]" *Yavuz*, 576 F.3d at 1174 (quotation cleaned up). Plaintiffs seek remedies that are equally available in Jersey. SAC, Prayer for Relief at 128–29; Seddon Decl. ¶ 41. Plaintiffs do not identify any remedy available to them in Colorado that would not be available in Jersey. *See also* Seddon Decl. ¶¶ 33–41 (describing the propriety of Jersey as a forum).

**B. Private and Public Interest Factors Favor Jersey as a Forum.**

To decline jurisdiction, courts consider private-interest factors including: ease of access to proof, compulsory process, witness costs, and practical trial considerations;

---

[6] The Court need not adopt Plaintiffs' malicious characterization of the Jersey legal system. *See* SAC ¶¶ 358–81; *AdvanFort Co. v. Zamil Offshore Servs. Co.*, 134 F.4th 760, 771 (4th Cir. 2025), *cert. denied*, 146 S. Ct. 1484, 223 L. Ed. 2d 508 (2026) ("[A] forum is not rendered inadequate . . . because of general allegations of corruption in the forum's judicial system."); Seddon Decl. ¶¶ 21–32 (describing integrity of Jersey courts).

and public-interest factors including: court congestion, burden on local jurors, local interest in local controversies, and familiarity with governing law. *Archangel*, 812 F.3d at 806, 808. Each factor favors Jersey or is neutral. And because Plaintiffs reside in Texas, not Colorado, their choice of forum is not entitled to deference. *Yavuz*, 576 F.3d at 1172.

**1. The Private Interest Factors Favor Jersey as a Forum.**

***First***, the exhibits to the SAC show the sources of proof are in Jersey, and access to proof favors transfer. *E.g.*, ECF. 115-02, 115-03, 115-04 (Jersey documents). Even with the parties' sophistication and e-discovery tools, the international nexus of witnesses and parties tilts this factor towards Jersey. *See Unitednet*, 112 F.4th at 1270 (affirming dismissal where district court explicitly considered use of videoconferencing technology but determined factors favored dismissal because most witnesses were located abroad).

***Second***, the availability of compulsory process for compelling attendance of witnesses favors Jersey. Any witnesses plausibly related to HSBC Bank's alleged wrongdoing are not located in Colorado. And any HSBC representatives who were involved in the alleged actions or may have knowledge of them (particularly vis-à-vis the loan) are not located in Colorado, either.

***Third***, the cost of obtaining attendance of willing non-party witnesses favors Jersey. As noted above, the likely non-party witnesses related to this case are based overseas. Keeping the case in the District of Colorado would require extensive travel from abroad—"an inconvenient task that would cause the parties to incur significant expenses." *Id.* Securing the attendance of willing witnesses in Jersey would be significantly less expensive. *HSBC Bank (Uruguay)*, 2022 WL 4447416, at *14.

***Fourth***, there are no premises in need of inspection, leaving this factor neutral.

***Fifth***, all other practical problems that make trial of the case easy, expeditious, and inexpensive favor Jersey. "[T]he central issue in this case is the business relationship between" Plaintiffs, the trusts, and the Defendants. *Yavuz*, 576 F.3d at 1181. These business relationships were consummated abroad, involved mostly foreign entities, and transpired almost entirely outside the United States. Thus, Jersey courts are more convenient. *Id.* (concluding that Swiss courts were more convenient as at-issue relationship was consummated in Switzerland, case involved mostly foreign entities, and allegations transpired almost entirely outside the United States).

**2. The Public-Interest Factors Favor Jersey as a Forum.**

***First***, the administrative burden on this Court favors Jersey. This District already faces a heavy criminal and civil docket—the busiest caseload in the Tenth Circuit, with cases averaging nearly 38 months to trial.[7] By contrast, the time to trial before the Royal Court is closer to 27 months. Seddon Decl. ¶ 18. Retaining this case presents significant administrative difficulties, including requiring the Court to apply Jersey law (with little federal guidance) and assist the parties in obtaining testimony from around the globe. *See Archangel*, 812 F.3d at 808 (administrative burden of interpreting and applying foreign law weighs in favor of dismissal).

***Second***, the burden of jury duty on members of a community with no connection to the litigation favors Jersey. Because this dispute is not local to the Colorado

[7] U.S. District Court – Judicial Caseload Profile (June 30, 2026), *available at* https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile0630.2026.pdf

community—indeed, not even the Texas-based Plaintiffs are here—there is no need to "burden[] the community with jury service." *Unitednet*, 112 F.4th at 1271.

***Third***, the local interest in having localized controversies decided at home favors Jersey. Jersey bears a greater interest in resolving this dispute as the site of administration for DFT1 and the venue where the alleged conduct occurred. SAC at 3–4, ¶¶ 304–12; *see also Yavuz*, 576 F.3d at 1181 (affirming forum-based dismissal finding Switzerland had "substantial interest in ensuring that conduct occurring within its borders, involving its entities, and, at least in part, involving contracts governed by its laws are resolved by its courts and under a faithful reading of its laws"). Like in *Yavuz*, Jersey—not Colorado—has a substantial interest in ensuring the alleged harms that occurred within its borders, wronged its entities, and involved trusts and agreements governed by its laws are "resolved by its courts and under a faithful reading of its laws." *Id.*

***Fourth***, trying a diversity case in a forum that is familiar with the governing law favors Jersey. Plaintiffs' claims against the HSBC Defendants rely on diversity jurisdiction, arise under Jersey law, have not been frequently litigated in the United States, and no meaningful guidance exists within the Tenth Circuit to assist the Court. It is therefore "far more appropriate to have plaintiff's tort claims tried in a [Jersey] forum, where the court is more familiar with [Jersey] law." *HSBC Bank (Uruguay)*, 2022 WL 4447416, at *15.

The Court should therefore dismiss Plaintiffs' claims under *forum non conveniens*.

## III. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE HSBC DEFENDANTS.

Plaintiffs' claims against the HSBC Defendants (Counts II-VI) are insufficient under Rule 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts need not

accept "a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Yet that is all Plaintiffs allege here.

### A. Plaintiffs Allege No Injury Caused by the HSBC Defendants, and Darrin Stock Alleges No Injury at All.

Fatal to all claims against HSBC, Plaintiffs fail to plead causation. Plaintiffs' theory is HSBC Bank—by maintaining bank accounts for Pantrust or extending the 2012 Loan—was a pawn of La Hougue/Pantrust and *its principals'* misappropriation of Plaintiffs' trust assets. SAC ¶¶ 305–12, 400–02. But the HSBC Defendants were not trustees, owed no fiduciary duties, and had no role in the alleged disbursal of trust assets, which the SAC attributes entirely to La Hougue/Pantrust, John Dick, Sr., and their associates, alleging *Pantrust deceived* HSBC, obtaining the loan with "fraudulent asset ownership structures and falsified financials." SAC ¶¶ 214, 259–67, 307.

Because HSBC's bank services did not cause the alleged misappropriation, Plaintiffs' alleged injuries are not "fairly traceable to the challenged action" of the HSBC Defendants and are "not the result of the independent action of some third party not before the court." *See Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005). Because the SAC does not identify a single act by an HSBC Defendant that produced the alleged dissipation, as opposed to mere ordinary banking services, all Plaintiffs' claims against the HSBC Defendants fail for lack of causation. *See Brooks v. Bank of Boulder*, 891 F. Supp. 1469, 1479 (D. Colo. 1995) (dismissing complaint where plaintiffs had not "identified a direct causal relationship between any use or investment of income received" by defendant bank and investors' damages).

Darrin Stock's individual claims fail for an independent reason: he does not allege

any injury and therefore lacks Article III standing to bring claims at all. He is not a beneficiary of any trust at issue; the SAC identifies Tanya Dick-Stock as the *sole* beneficiary of DFT1. SAC ¶¶ 2–4, 93. The only "injuries" he alleges (attorneys' fees, litigation costs, depletion of "marital assets," and credit impairment) are either derivative of his wife's alleged losses or the ordinary costs of litigation, neither of which is a cognizable injury, let alone one caused by the HSBC Defendants. SAC ¶¶ 449(a)–(f). He also lacks standing to bring Counts II–III in a "representative capacity" on behalf of unidentified (seemingly hypothetical) "minors and unborns" alleged to be beneficiaries of succession trusts in his spouse's line. SAC ¶¶ 399, 413. For minors, Rule 17(c)(1) permits certain representatives to sue, but the SAC does not allege he has a child with Ms. Dick-Stock, that *any* minor exists, or that Stock is a representative under Rule 17(c)(1). *See Trump v. New York*, 592 U.S. 125, 131 (2020) (rejecting claim because case was "riddled with contingencies and speculation"); *Whitmore v. Arkansas*, 495 U.S. 149, 156–57 (1990) (plaintiff lacked standing because alleged injury depended on a cascade of hypothetical future events).

**B. Plaintiffs' Dishonest Assistance Claims (Counts II & IV) Are Time-Barred and Do Not Identify Any "Dishonest Assistance" by HSBC.**

***First***, Plaintiffs' dishonest assistance claims are time-barred. Their assertion that no statute-of-limitations period applies because their claims sound in equity is incorrect under Jersey law.[8] Seddon Decl. ¶¶ 118–121, 148(a). Instead, dishonest assistance

[8] Jersey law provides the relevant statutes of limitations for Plaintiffs' Jersey law claims regardless of whether this case is heard in Colorado or in Jersey. *See Jenkins v. Panama Canal Ry. Co.*, 208 P.3d 238, 239-40 (Colo. 2009) (citing C.R.S. § 13-80-110 and applying

claims are subject to a three-year statute of limitations. *See* Seddon Decl. ¶¶ 99–102, 111–112, 115, 121, 148(a). The alleged conduct giving rise to the dishonest assistance claim against the HSBC Defendants occurred more than three years before Plaintiffs filed this case in December 2025; indeed, they allege they put HSBC on notice of the claim in 2015, more than ten years before bringing this action. *See, e.g.*, SAC ¶ 251 (2015 proceeds from DFT1 assets), ¶¶ 261–67 (2008 transactions), ¶¶ 278–82 (2010 consent order), ¶¶ 304–12 (the 2012 Loan), ¶¶ 304 & 311 (putting HSBC on notice in 2015 that the 2012 Loan was "obtained under suspicious circumstances"), ¶¶ 349 & 353 (2006 KYC allegations). Since the latest-in-time allegations stem from 2015, even Jersey's standard ten-year prescription period (which applies to claims with no recognized limitations period) would still bar this claim. Seddon Decl. ¶¶ 98, 110, 115.

***Second***, Plaintiffs fail to plead "assistance" or "dishonesty" as required to state a cognizable dishonest assistance claim. Seddon Decl. ¶¶ 53–61, 62–83, 148(b). Plaintiffs' allegations that the HSBC Defendants provided banking infrastructure, externalized KYC safeguards, and facilitated transactions, SAC ¶ 402, do not identify specific breach of trust by a trustee or acts of assistance by either HSBC Defendant that specifically facilitated the trustee's breach. Seddon Decl. ¶¶ 56–61, 77, 148(b). Similarly, Plaintiffs' allegations of "dishonesty" are conclusory, lacking any specificity to the HSBC Defendants' intent, knowledge, or specific actions underlying this claim. SAC ¶¶ 345–57; *see also* Seddon Decl. ¶¶ 62—83, 148(b).

---

Panama statute of limitations for claims brought in Colorado); C.R.S. § 13-82-104(1)(a) ("[I]f a claim is substantively based upon the law of one other state, the limitation period of that state applies.").

Plaintiffs' claims boil down to allegations that the HSBC Defendants provided ordinary banking services with deficient compliance procedures. But these threadbare allegations of negligence do not amount to dishonest assistance under Jersey law. To the extent Plaintiffs rely on "blind eye" dishonesty, SAC ¶¶ 304–12, the SAC must identify *a specific individual* who had reason to suspect *a specific transaction* and deliberately declined to investigate it, Seddon Decl. ¶¶ 69–75. Plaintiffs plead no such facts, relying instead on improperly aggregated corporate knowledge and generic banking services. SAC ¶¶ 398–411; Seddon Decl. ¶¶ 59–61, 73–77, 148(b). Plaintiffs have therefore failed to adequately plead dishonest assistance claims. *See Longhorn Vaccines & Diagnostics, LLC v. Spectrum Sols. LLC*, 564 F. Supp. 3d 1126, 1142 (D. Utah 2021) (willful blindness assertions require specific allegations).

**C. Plaintiffs' Unjust Enrichment Claims (Counts III & VI) Fail Because They Do Not Allege That HSBC Was Enriched.**

Regardless of Plaintiffs' nomenclature,[9] Counts III and VI are substantively unjust enrichment claims. Count III alleges Defendants are "liable in restitution and unjust enrichment"; their retention of benefits constitutes "continuing unjust enrichment"; and Plaintiffs seek "restitution and equitable compensation." SAC ¶¶ 415-416, 427. Count VI similarly alleges the HSBC Defendants accepted and retained a payment on a loan obligation from Darrin Stock[10] and continued retention of those funds became unconscionable. SAC ¶¶ 446-448. But the SAC includes no allegations specifying the

[9] "Equitable Compensation" and "Unconscionable Retention / Money Had and Received" are not cognizable causes of action under Jersey law. Seddon Decl. ¶¶ 120, 122, 141–142, 145.

[10] Count VI raises this allegation, SAC ¶ 446, with no supporting facts.

transaction, why it was "unenforceable," or why it was improper for HSBC to seek or receive repayment on a loan it advanced. *See id.* Both counts are therefore properly analyzed as unjust-enrichment claims. Seddon Decl. ¶¶ 122, 145–146.

***First***, these claims, too, are time-barred. Under Jersey law, unjust enrichment has a statute of limitations of ten years. Seddon Decl. ¶ 120, 147, 148(c). HSBC's alleged acts occurred more than ten years before the complaint was filed in December 2025. For example, the alleged "fees, interest, spreads, collateral benefits, and other financial advantages traceable to" received and retained, SAC ¶ 414, occurred before 2015; La Hougue/Pantrust approached HSBC to establish a banking relationship in 2006, SAC ¶¶ 230–235 & 353; the challenged banking activities began in 2007 and 2008, SAC ¶¶ 242–249, 261–266; and HSBC extended the challenged loan in 2012, SAC ¶¶ 305–309. Plaintiffs even admit they raised concerns to HSBC Bank in 2015. SAC ¶¶ 304, 310.

Plaintiffs cannot avoid prescription by pleading "continuing unjust enrichment." SAC ¶ 416. Under Jersey law, prescription runs from accrual of the unjust enrichment claim (here, the alleged fees, interest, spreads, and other benefits, SAC ¶ 414), and does not restart. Seddon Decl. ¶¶ 130–131. Nor can Plaintiffs rely on any tolling or discovery rule arguments when they admit they knew of—and raised with HSBC Bank—the facts of concern in 2015. SAC ¶¶ 304–310. Counts III and VI must therefore be dismissed.

***Second***, Plaintiffs fail to state a claim at least because (i) they do not identify any specific transaction or payment that HSBC received or (ii) plead facts showing those alleged "enrichments" to the HSBC Defendants were "unjust" under Jersey Law. SAC ¶¶ 414–28; Seddon Decl. ¶¶ 127–129, 144–146, 148(c). To be "unjust," Plaintiffs must

show an absence of a legal basis for the defendant's retention of the benefit. Seddon Decl. ¶ 127(b). Here, Plaintiffs supply the legal basis: the alleged payments to HSBC Bank (again, not HSBC USA) were repayments on the 2012 Loan or banking fees, to which HSBC Bank undisputedly had legal entitlement.

Count III alleges, via group pleading, that all Defendants received and retained "fees, interest, spreads, collateral benefits, and other financial advantages traceable to the misuse and dissipation of DFT1 and Jersey Trust assets" and are liable because they failed to disgorge these benefits and continue to enjoy their economic fruits. SAC ¶¶ 414–27. But those allegations speak only to the existence of an alleged benefit and Plaintiffs' desire that it should not be kept. They do not plead the essential requirement that the HSBC Defendants lacked a legal basis for receiving or retaining any payments from a client or borrower. Indeed, the SAC repeatedly presupposes the existence of banking and lending relationships through which the alleged benefits were earned. *See id.* ¶¶ 54, 305-306, 311, 408, 414. Plaintiffs never plead that any relevant banking, account, loan, or other transaction or agreement giving rise to those fees and charges was void, rescinded, set aside, or otherwise rendered legally ineffective. Seddon Decl. ¶¶ 128, 148(c).

Analogous claims under US law are governed by the same principle. Quasi-contractual remedies like unjust enrichment generally are unavailable where an enforceable contract governs the subject matter at issue, unless the agreement has been rescinded, invalidated, or is otherwise unenforceable. *School-Link Techs., Inc. v. Applied Res., Inc.*, 471 F. Supp. 2d 1101, 1116 (D. Kan. 2007); *contra* SAC ¶ 305 (citing the 2012 Loan, governed by contract). Likewise, where fees or charges arise from a contractual

lending relationship, a plaintiff must challenge the contractual basis for those charges before resorting to unjust-enrichment remedies. *Menlove v. Bank of Am., N.A.*, No. 2:12-cv-534, 2012 WL 4356367, at *5 (D. Utah 2012). Plaintiffs do not do so in the SAC.

Plaintiffs' "enterprise-wide retained profits" theory under Count III independently fails. Under Jersey law, unjust enrichment is a *personal* remedy directed at *a particular defendant's* enrichment at claimant's expense. Seddon Decl. ¶ 129. It is not a mechanism for group-wide disgorgement of profits allegedly retained somewhere within a corporate enterprise. Seddon Decl. ¶¶ 128–129 (claim must be attributed to a specific defendant). Count III repeatedly refers to alleged benefits retained by the "HSBC Group," "Defendant banks," or "Defendants" collectively, without identifying any enriched recipient of any particular benefit. SAC ¶¶ 417–27. That defect is fatal. *See Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013) (complaint must "make clear exactly *who* is alleged to have done *what to whom*"); *Weiszmann v. Kirkland & Ellis*, 732 F. Supp. 1540, 1546 (D. Colo. 1990) ("Merely collectivizing defendants in an alleged pattern of racketeering activity will not suffice.").

Count VI fares no better. Plaintiff Darrin Stock alleges only that HSBC "accepted and retained" a payment on a loan that HSBC allegedly knew or should have known was unenforceable. SAC ¶ 446. SAC does not allege facts (i) substantiating any transaction by which Mr. Stock paid anything to HSBC or (ii) showing that HSBC lacked a legal basis to receive or retain the payment. Instead, the entire claim consists of the legal conclusion, citing no facts, that retention of the payment became "unconscionable." SAC ¶¶ 447–48; *see* Seddon Decl. ¶¶ 141–147 (key principle is legal basis for retention, not

"unconscionability").

Accordingly, because Plaintiffs plead only that the HSBC Defendants received ordinary banking fees, interest, and benefits, without alleging facts showing that receipt or retention of those benefits lacked a legal basis, Counts III and VI fail to state a claim.

### D. Plaintiff Darrin Stock's Claim V Fails

Count V, "Unlawful Means," alleges Defendants acted in concert under a common design with intent to injure Mr. Stock's ability to pursue legal rights. SAC ¶¶ 437–444. The SAC cites no supporting authority. The closest Jersey claim requires (i) an unlawful action, (ii) taken pursuant to a combination or agreement between a defendant and another, and (iii) an intent to injure him. Seddon Decl. ¶ 135.

First, this claim has a three-year prescription period, Seddon Decl. ¶ 139, but no allegation concerns conduct within three years, so the claim is time-barred. Second, Count V fails because the SAC identifies no (i) unlawful action against Mr. Stock, (ii) actor or agreement, or (iii) specific loss or damage, much less facts to support HSBC Defendants intended to injure him. SAC ¶¶ 437–44; Seddon Decl. ¶¶ 137–138. This is a "conclusory" allegation, *Iqbal*, 556 U.S. at 681, involving "nothing more than a formulaic recitation of the elements" that is not entitled to an assumption of truth and should be dismissed, *Id.* (citing *Twombly*, 550 U.S. at 555).

## CONCLUSION

For the foregoing reasons, the Court should dismiss all claims against the HSBC Defendants.

Respectfully submitted this 17th day of September, 2026.

**KING & SPALDING LLP**

*/s/ Angela Tarasi*
Angela Tarasi #45250
atarasi@kslaw.com
Jared Lax #56718
jlax@kslaw.com
Tel: +1 720 535 2319
1401 Lawrence Street, Suite 1900
Denver, CO 80202

Leigh Nathanson NY# 4900106
lnathanson@kslaw.com
Brian Donovan NY# 5433669
bdonovan@kslaw.com
Tel: +1 212 556 2162
1290 Avenue of the Americas,
14th Floor New York, NY 10104

*Counsel for Defendants HSBC Bank USA, N.A. and HSBC Bank plc*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of September, 2026, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

*/s/ Angela Tarasi*
Angela Tarasi